## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BELINDA J. WARFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  06-CV-437-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Belinda J. Warford (Plaintiff) appeals the decision of the Commissioner denying her Social Security benefits.  Plaintiff asserts that the ALJ failed (1) to perform a proper determination at Steps Two and Three of the sequential evaluation process with regard to her alleged mental impairment; (2) to fully and fairly develop the record; (2) to perform a proper credibility determination; and (3) to propound a proper hypothetical to the vocational expert ("VE").  For the reasons discussed below, the Court affirms the decision of the Commissioner.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on April 6, 1958. (R. 58, 268.)  She has a high school education and past relevant work as a cafeteria worker, housekeeper, habilitation training specialist, cashier, driver, and janitor.  (*See* R. 68, 73, 330-32.)  She initially alleged that she became disabled on October 11, 2003, by lower back problems, numbness in her lower leg and

---

[1]   Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section  42 U.S.C. § 405(g) of the Social Security Act.

[2]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

foot, and pain in her back and right leg following surgery on her lower back. (*See* R. 67.) At the hearing, her representative also alleged that plaintiff had urinary tract infections, irritable bowel syndrome, hypertension, insomnia, depression and breathing problems. (R. 306-07.)

Plaintiff filed her application for a period of disability, disability insurance benefits and supplemental security income on March 8, 2004.[3/] (R. 53-56, 268-70.) After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing. Administrative Law Judge (ALJ) John Volz held the hearing on February 2, 2006 (*see* R. 302-35), and issued an unfavorable decision on March 22, 2006. (R. 12-19.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on July 7, 2006. (R. 5-7.) Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

---

[3/] Plaintiff protectively filed on February 18, 2004. (R. 52, 267.)

42 U.S.C. § 423(d)(2)(A).[4/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750.

"The finding of the Secretary[5/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.

---

[4/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[5/] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.  This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff's degenerative disk disease and status post lumbar diskectomy were medically severe impairments that significantly limit Plaintiff's ability to do basic work activities. (R. 17.)  However, the ALJ determined that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 18.)  He also found that Plaintiff had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, and she could also sit, stand and walk about 6 hours each in an 8-hour day. (*Id.*)  In so finding, he opined that plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms were not entirely credible. (*Id.*)  He deemed claimant capable of performing past relevant work as a cafeteria worker and housekeeper, as such work did not require the performance of work-related activities precluded by Plaintiff's RFC. (R. 19.)  Accordingly, he concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, from October 11, 2003 through the date of his decision, March 22, 2006. (*Id.*)

### 4.  REVIEW

**A.     Plaintiff's Alleged Mental Impairment**

Plaintiff's first assignment of error is that the ALJ failed to perform a proper determination at Steps Two and Three of the sequential evaluation process. Specifically, Plaintiff faults the ALJ for not finding that her mental impairment (depression) was medically severe. (*See* R. 17.) The Court notes, as the consultative examiner did, that Plaintiff did not allege initially that she was disabled by mental issues. (*See* R. 239.)

At Step Two, the claimant must establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1521(b)). Although the claimant need only a *de minimus* showing of an impairment at Step Two, he must show "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). An impairment giving rise to disability benefits is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Therefore, "[t]he Step Two severity determination is based on medical factors alone, . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

Social Security Ruling ("SSR") 96-3p sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable impairments(s) and alleged symptoms(s), the Commissioner is to then consider the

"intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe*, SSR 96-3p, 1996 WL 374181 (S.S.A.). "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process. *Langley*, 373 F.3d at 1123 (citation and internal quotations omitted).

The ALJ properly applied these regulations. He discussed the records from the Sapulpa Indian Health Center regarding her complaints of depression and the medications prescribed for it. (R. 17.) He noted her sleeping difficulties and menopausal symptoms. The ALJ pointed out that Plaintiff took Trazodone for insomnia, but she did not take "additional medication for treatment of depression until October 2005 when Zoloft was prescribed." (*Id.*) He also observed that Plaintiff reported other symptoms of depression in December 2005, and her name was put on a waiting list for behavioral health treatment, but her treating physician never referred her for counseling or therapy. (*Id.*) Finally, the ALJ mentioned Plaintiff's testimony about her fear of germs, obsessive hand-washing, and perfectionism, but noted that these were present when she was still working.

Plaintiff did not show "more than the mere presence of a condition or ailment." *Hinkle*, 132 F.3d at 1352. The ALJ did not err in finding that her alleged mental

impairments had no more than a minimal effect on her ability to do basic work activities, and thus, were not severe within the meaning of the regulations.[6]

## B.     Developing the Record

At the hearing before the ALJ, Plaintiff's representative requested an electromyogram ("EMG") and a psychological evaluation to demonstrate the severity of Plaintiff's alleged "reflex sympathetic dystrophy" and mental impairments. (*See* R. 334.) At the last appointment Plaintiff had with Don L. Hawkins, M.D., the surgeon who performed the discectomy on her back, Dr. Hawkins stated his concern that Plaintiff was "developing some degree of reflex sympathetic dystrophy" and he diagnosed her with "reflex sympathetic dystrophy right leg[7] postoperative discectomy L5-S-1." (R. 159). He recommended that she have a steroid injection, a lumbar sympathetic block, physical therapy, a TENS unit, and medication. (*Id.*)

The seminal case in the Tenth Circuit on the ALJ's duty to develop the record is *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997). There, the Tenth Circuit observed that, although a claimant has the general duty to prove disability, a social security disability

---

[6] Although the ALJ reached his decision as to Plaintiff's alleged mental impairments at Step Two of the sequential evaluation process, he made passing reference to considerations that would have applied had he proceeded to Step Three. In particular, he relied upon the consultative examiner's findings (*see* R. 235) to find that Plaintiff's depression would not have met or equaled the applicable Listing (12.04), given the required level of severity set forth in parts "B" or "C" of the Listing. (R. 17-18; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.)

[7] The regulations explain that "Reflex Sympathetic Dystrophy Syndrome (RSDS)," also frequently known as "Complex Regional Pain Syndrome, Type I," is a unique clinical syndrome that may develop following trauma to a single extremity and is characterized by complaints of intense pain and typically includes signs of autonomic dysfunction. *Titles II and XVI: Evaluating Cases Involving Reflex Sympathethic Dystrophy Syndrome/Complex Regional Pain Syndrome*, SSR 03-2p, 2003 WL 22399117 (S.S.A.) "It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." *Id.*

hearing is a non-adversarial proceeding. Accordingly, the ALJ is responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* at 1164 (citations omitted.) The *Hawkins* court acknowledged that the Secretary has "broad latitude" in ordering consultative examinations, which are necessary where there is a direct conflict in the medical evidence requiring resolution, the medical evidence in the record is inconclusive, or additional tests are required to explain a diagnosis already contained in the record. *Id.* at 1166; *see* 20 C.F.R. §§ 404.1512(f); 404.1519a; 416.912(f); 416.919a.[8/] However, the *Hawkins* court emphasized that

> the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

113 F.3d at 1166.

The ALJ in this case explained to Plaintiff's counsel at the administrative hearing that he did not "see any medical evidence in the record to justify any additional testing . . . , especially about the mental part." (R. 334.)  As set forth above, Plaintiff did not present evidence sufficient to suggest a reasonable possibility that severe impairment exists as to

---

[8/]   These regulations explain situations in which the Commissioner deems a consultative examination necessary.  Generally, the need for a consultative examination arises when information the Commissioner needs is not "readily available" from the records of a claimant's medical treatment source, or the Commissioner is "unable to seek clarification" from claimant's medical source." 20 C.F.R. §§ 404.1512(f); 416.912(f).  The Commissioner will purchase a consultative examination "when the evidence as a whole, both medical and nonmedical is not sufficient to support a decision on [a] claim." 20 C.F.R. §§ 404.1519a(b); 416.919a(b).  This includes, but is not limited to, situations where the additional evidence needed to decide the claim is not contained in the records of the claimant's medical sources; the evidence cannot be obtained for reasons beyond the claimant's control; highly technical or specialized medical evidence is needed; a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved; or there is an indication of a change in the claimant's condition. *Id.*

her depression, and the ALJ fully discussed that issue in his written opinion. As to her reflex sympathetic dystrophy, the ALJ discussed Dr. Hawkins' diagnosis in addition to other evidence of the pain she experienced subsequent to her back surgery. (R. 16-17.) He also explained why he found her statements about her pain "not entirely credible." (R. 18; see discussion below.) He concluded that she did not have disabling pain, and there is no evidence to suggest that the reflex sympathetic dystrophy caused any limitations the ALJ failed to include in his RFC. Plaintiff has not shown that there is a direct conflict in the medical evidence requiring resolution, that the medical evidence in the record is inconclusive, or that additional tests are required to explain a diagnosis already contained in the record. *Hawkins,* 113 F.3d at 1166. The ALJ did not err in refusing Plaintiff's counsel's request for an EMG and a psychological evaluation.

**C.    Credibility**

Plaintiff also asserts that the ALJ did not properly evaluate her subjective allegations concerning her impairments. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). Some of the factors relevant to an assessment of credibility include attempts to find relief, use of medication, willingness to try any treatment prescribed, the use of crutches or a cane, regular contact with doctors, and the claimant's daily activities. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987); *See Policy*

*Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements,* SSR 96-7p, 1996 WL 374186 (S.S.A.).

Plaintiff argues that, in making his credibility determination, the ALJ ignored evidence of her pain, symptoms of her mental problems, her medications, her hearing testimony, her activities of daily living, and her work history. (Opening Br., Dkt. # 18, at 7-9.) Plaintiff's argument is not well-grounded. The ALJ considered all the relevant medical evidence as well as Plaintiff's testimony before he found that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 18.) In particular, he pointed out that, despite Plaintiff's testimony regarding her insomnia "in large part due to hot flashes," she was not willing to try hormone replacement therapy or other medications to relieve her problem. (*Id.*) He also noted that none of her treating physicians had placed any restrictions or limitations on her activities. (*Id.*) This is a proper consideration. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995.)

As the Commissioner observed, an ALJ must set forth the specific evidence he relies on in evaluating a claimant's credibility, but is not required to perform a "formalistic, factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ addressed many of the *Luna* factors in making his credibility findings, and he closely and affirmatively linked them to substantial evidence. The Court finds no error in this regard.

**D.    Hypothetical Question to the Vocational Expert**

Finally, Plaintiff argues that the ALJ failed to pose a hypothetical question to the vocational expert. This argument is premised on Plaintiff's prior arguments regarding the alleged severity of her RSDS and her depression and, therefore, her assumption that the ALJ had no substantial evidence upon which to base his decision that she could return to her past relevant work. This argument fails because the ALJ's has no obligation to elicit the testimony of a vocational expert until a claimant establishes a disability which prevents the claimant from performing his or her past relevant work. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992); *see also Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) ("Only after a determination that claimant suffers from an impairment or combination of impairments severe enough to preclude her from returning to her prior work activity is the ALJ under obligation to make an inquiry to determine what other employment is available to the claimant in the national economy.")

Plaintiff described her past relevant work when she applied for disability benefits and at the administrative hearing. (R. 76-83, 307-11, 319). The ALJ asked the vocational expert about Plaintiff's past relevant work, and the vocational expert asked Plaintiff about the lifting restrictions of her prior jobs. (R. 330-31.) The ALJ also asked the vocational expert to classify the exertional and skill levels required by Plaintiff's past relevant work. (R. 331). The vocational expert testified that Plaintiff's prior jobs as a cafeteria attendant and housekeeper were at the light exertional level. (R. 332). When the ALJ issued his determination, he recited the vocational expert's testimony and found that Plaintiff had the RFC to perform her past relevant work as a cafeteria worker and housekeeper. (R. 19.)

He did not err by failing to propound a proper hypothetical question to the vocational expert (as a Step Five determination would have entailed).

### 5. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows correct legal principles and is supported by substantial evidence. Accordingly, the Court **affirms** the decision of the Commissioner.

It is so ordered this ____ day of December, 2007.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge